IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TREVA LYNN KELLY,

      Plaintiff,                        No. 2:11-cv-2534-KJN

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                  ORDER

         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from May 31, 2007, through the date of the final administrative decision. (Dkt. No. 13.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (Dkt. No. 16.) For the reasons that follow, the court grants plaintiff's motion for

////

---

[1] This case was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed before a United States Magistrate Judge. (Dkt. Nos. 9, 18.)

1

summary judgment in part, denies the Commissioner's cross-motion for summary judgment, and remands the case for further proceedings under sentence four of 42 U.S.C. § 405(g).

I.  BACKGROUND

Plaintiff was born on January 5, 1967, has attended four or more years of college, and previously worked as a paralegal and legal/office assistant.[2] (Administrative Transcript ("AT") 78-79, 84, 88, 143, 173, 175.)  On January 15, 2009, plaintiff applied for DIB,[3] alleging that she was unable to work as of May 31, 2007, primarily due to back/neck injuries, fibromyalgia, chronic pain and fatigue, and depression.  (AT 11, 84, 161, 167.)  On July 22, 2009, the Commissioner determined that plaintiff was not disabled.  (AT 11, 84.)  Upon plaintiff's request for reconsideration, the determination was affirmed on February 16, 2010.  (AT 11, 88.)  Subsequently, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on October 20, 2010.  (AT 11, 57, 113.)

In a decision dated December 21, 2010, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from May 31, 2007, through the date of that decision.  (AT 11-20.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on July 29, 2011.  (AT 1-6.)  Thereafter, plaintiff filed this action in federal district court on September 27, 2011, to obtain judicial review of the Commissioner's final decision.  (Dkt. No. 1.)

////

---

[2]  Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts herein.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3]  Plaintiff also submitted an application for Supplemental Security Income ("SSI") on January 15, 2009, which was denied on January 29, 2009 for excessive assets/resources.  (AT 82-83.)  Although plaintiff's motion suggests that she also seeks judicial review of this denial of SSI benefits (Dkt. No. 13 at 4-5), any argument with respect to that denial is waived, because the record shows that she did not raise the issue before the ALJ or the Appeals Council.  (AT 7, 104, 113, 267, 272.)  See Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that claimants must raise issues during the administrative proceedings to preserve them on appeal).

## II. ISSUES PRESENTED

Plaintiff has raised the following issues: (1) whether the ALJ improperly failed to rule on plaintiff's motion to reopen a prior application; (2) whether the ALJ improperly rejected the opinions of plaintiff's treating physician and the consultative psychiatric examiner; and (3) whether the ALJ improperly discounted the testimony of plaintiff and third parties as to the nature and extent of plaintiff's functional limitations.

## III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

## IV. DISCUSSION

### A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[4] As an initial matter, the ALJ found that plaintiff

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).

remained insured for purposes of DIB through September 30, 2012.  (AT 13.)  At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since May 31, 2007, plaintiff's alleged disability onset date.  (Id.)  At step two, the ALJ determined that plaintiff had the following severe impairments: "nonspecific generalized myofascial discomfort, fibromyalgia, multiple joint pain to the back and neck, status post automobile accidence [sic], chronic pain syndrome, depression and substance abuse."  (Id.)  However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 16.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows: "[T]he undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can perform detailed but

/////

---

A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

not complex tasks; alternatively, she can understand, remember and carry out simple instructions in a nonpublic setting." (AT 17.)

At step four, the ALJ found that plaintiff was capable of performing her past relevant work as an office assistant. (AT 16.) It is unclear how the ALJ reached this conclusion, because the vocational expert ("VE") testified that, in light of plaintiff's assessed RFC, plaintiff was unable to perform her past work. (AT 79.) Nevertheless, the ALJ, in the alternative, proceeded to step five and determined, based on the VE's testimony, that there were a significant number of other jobs in the economy that plaintiff could perform. (AT 19.) These jobs included document preparer (with 200 jobs in the regional economy, 4,000 jobs in California, and 30,000 jobs in the national economy); nut sorter (with 20 jobs in the regional economy, 1,000 jobs in California, and 5,000 jobs in the national economy); and optical assembler (with 60 jobs in the regional economy, 1,000 jobs in California, and 6000 jobs in the national economy). (AT 19, 79-80.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from May 31, 2007, through the date of the ALJ's decision. (AT 20.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

1. Whether the ALJ improperly failed to rule on plaintiff's motion to reopen a prior application

Plaintiff first contends that the ALJ erred in failing to rule on plaintiff's motion to reopen a prior DIB application that plaintiff had filed in 2008. Plaintiff concedes that the denial of the 2008 DIB application was not timely appealed and thus became administratively final, but urges that 20 C.F.R. § 404.988(b) allows a determination or decision regarding DIB to be reopened within four (4) years for "good cause." However, as the Ninth Circuit explained:

> Once a decision becomes administratively final, the Secretary's decision to reopen a claim is purely discretionary. Discretionary decisions are not "final decisions" within the meaning of section 405(g). Therefore, a refusal by the Secretary to reopen a previous decision is not a "final" decision subject to judicial review.

5

Taylor v. Heckler, 765 F.2d 872, 877 (9th Cir. 1985) (internal citation omitted); see also 20 C.F.R. 404.987 (providing that when the claimant fails to request review within the applicable time period, the claimant loses the right to further review, and the decision or determination becomes final, although it "may" be reopened and revised by the Commissioner).

Plaintiff appears to acknowledge that a decision not to reopen a prior application may not be subject to judicial review, but argues, without citation to any precedent, that the ALJ's complete failure to address the motion to reopen deprived plaintiff of a full and fair hearing. (Dkt. No. 13 at 19.) That argument lacks merit, because plaintiff lost her right to further review of the 2008 DIB claim when she failed to request review within the applicable time period. Whether the ALJ's denial of the motion to reopen the 2008 DIB claim was explicit or implicit, this court lacks jurisdiction under section 405(g) to review that decision. Taylor, 765 F.2d at 877.

### 2. Whether the ALJ improperly rejected the opinions of plaintiff's treating physician and the consultative psychiatric examiner

Plaintiff next contends that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of plaintiff's treating physician, Dr. Randall West, and the consultative psychiatric examiner, Dr. Shohreh Ghaemian.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a

treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

While the ALJ discussed several treatment records from plaintiff's treating providers, plaintiff correctly contends that the ALJ failed to even address the April 6, 2010 functional assessment by plaintiff's primary treating physician, Dr. West. (AT 630-32.) In that assessment, Dr. West indicated that he had treated plaintiff since March 5, 2008, and diagnosed plaintiff with fibromyalgia and chronic pain syndrome. (AT 630.) Dr. West found that plaintiff had muscle spasms, restriction to range of motion in her neck and back, 14 trigger points related to fibromyalgia throughout her musculoskeletal system, and noted that she was depressed and anxious-appearing. (Id.) Dr. West assessed plaintiff with various mental impairments, including short-term memory deficits, depression, anxiety, and concentration and attention deficits (primarily caused by her pain and insomnia). (AT 631.) He opined that plaintiff's complaints of

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527.

pain attributable to her impairments were credible. (Id.) Dr. West noted that plaintiff had restrictions in walking, standing, sitting, climbing stairs and ladders, bending, and that she would require rest breaks or periods during the day. (AT 630-31.)[6] Finally, Dr. West opined that plaintiff was unable to perform a full range of sedentary work on a full-time basis, that she had been disabled since February 10, 2007, but that he expected improvement in her condition with ongoing treatment. (AT 630-32.)

Although Dr. West's assessment is relatively brief and somewhat lacking in detail, the court cannot conclude, as a matter of law, that Dr. West's opinion is so conclusory or unsupported that failure to consider it would have been essentially harmless. Meanel, 172 F.3d at 1114. The ALJ found, as Dr. West opined, that plaintiff suffered from severe impairments, including fibromyalgia, multiple joint pain to the back and neck, chronic pain syndrome, and depression. (AT 13.) Furthermore, the record includes numerous treatment records from Dr. West over a period of approximately two years, and his opinion is presumably based on his overall clinical findings made in the course of a fairly extensive treatment relationship. (See e.g. AT 404-521.)

Defendant's counsel points to various portions of the record in an attempt to explain how the ALJ could potentially have discredited Dr. West's assessment. For example, defendant argues that Dr. West's assessment is inconsistent with certain imaging studies showing relatively normal findings or mild abnormalities, excessively relies on plaintiff's subjective reports of symptoms and limitations, is inconsistent with his own clinical findings,

---

[6] It appears that page two of Dr. West's April 6, 2010 report was missing from the records before the ALJ, but that a complete version of the report was submitted to the Appeals Council. (Compare AT 630-32 with AT 663-66.) On the missing page two, Dr. West provided more specific sit/stand/walk limitations, opining that plaintiff could sit, stand, and walk for less than one hour each in total during an 8-hour work day, and that plaintiff could lift less than 5 pounds occasionally. (AT 664.) The fact that the ALJ did not have access to this one page of the report with more detailed limitations does not affect the court's analysis, because the ALJ did not reject Dr. West's April 6, 2010 functional assessment on the ground that it was conclusory or lacked supporting information – as noted above, the ALJ did not discuss the assessment at all.

and is inconsistent with consultative examiner and rheumatologist Dr. Haselwood's findings. (Def.'s Cross-Mot. for Summ. J. 10-12.)  Indeed, Dr. Haselwood could not confirm a diagnosis of fibromyalgia based on his examination of plaintiff, stating that much of plaintiff's "symptomatology may be related to non-specific generalized myofascial discomfort and hypervigilance for same associated with non-organic amplification possibly related to anxiety/depression and life stressors."  (AT 526.)  He opined that plaintiff "should have the capability of performing a reasonably full range of at least sedentary vocational functionality without significant limitations.  It is possible that Ms. Kelly does not have the psychologic stamina to perform sustained vocational activities but this is best deferred to other appropriate subspecialty opinion."  (Id.)

        Regardless, the fact remains that the ALJ did not undertake such an analysis.  The court is required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009). The Commissioner's decision "must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."  See Barbato v. Comm'r of Soc. Sec. Admin., 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996); see also Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[W]e are wary of speculating about the basis of the ALJ's conclusion....").  Because the ALJ never mentioned Dr. West's April 6, 2010 functional assessment, it is unclear whether the ALJ tacitly rejected the assessment or whether he mistakenly missed it and never even considered it.  In short, there are no reasons for rejecting Dr. West's April 6, 2010 functional assessment that the court can review.  As such, remand is necessary for proper consideration of Dr. West's opinion along with all the other record evidence.

        Plaintiff instead urges the court to credit Dr. West's opinion as true and remand the case for payment of benefits.  (Pl.'s Mot. for Summ. J. 22, 30.)  The decision as to whether a case should be remanded for further proceedings or an award of benefits is within the discretion

of the court. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). "[W]e have credited evidence and remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. (citations omitted); see also Lester, 81 F.3d at 834; Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988) (holding that an award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings" and "the record has been thoroughly developed"). This is a recognition of the "need to expedite disability claims." Varney, 859 F.2d at 1401.

However, in this case, Dr. West's assessment, while not entirely unsupported, is brief and somewhat lacking in detail. Moreover, as defendant points out, there appear to be some significant inconsistencies in the record evidence as to the severity of plaintiff's symptoms and functional limitations. Such inconsistencies are more appropriately resolved by the ALJ after consideration of all the evidence in the record, including Dr. West's assessment. Consequently, the court declines to credit Dr. West's opinion as a matter of law.

Additionally, plaintiff further contends that the ALJ improperly rejected the May 2, 2009 opinion of consultative examiner and psychiatrist Dr. Shohreh Ghaemian. (AT 535-39.) Dr. Ghaemian diagnosed plaintiff with major depressive disorder, recurrent, chronic, severe, with psychosis; posttraumatic stress disorder, chronic; alcohol abuse, in late, full, sustained remission per plaintiff's report; and a GAF of 53.[7] (AT 538.) Dr. Ghaemian opined that plaintiff's ability to interact with colleagues and societies was limited due to her self-

---

[7] GAF is a scale reflecting "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id.

10

isolating behavior and her PTSD symptoms; plaintiff's ability to perform simple tasks was adequate, although she was not able to maintain concentration for a full eight-hour shift of simple repetitive tasks; plaintiff's ability to manage stressors was extremely limited; and plaintiff's ability to perform detailed and complex tasks was limited due to inability to tolerate the stress, intrusive flashbacks related to previous sexual abuse by her brother in the 1980s, and severe depressive symptoms.  (AT 535-36, 539.)  Dr. Ghaemian concluded that plaintiff was not capable of any gainful employment.  (AT 539.)

The ALJ considered Dr. Ghaemian's opinion as follows:

> [T]he undersigned rejects the opinion of the psychiatric consultative examiner that the claimant cannot not work [sic] because his report his [sic] based entirely on the claimant's subjective rendition of her symptoms and it is inconsistent with his own findings and GAF assessment.  Moreover, it is inconsistent with the findings of treating physicians, DDS medical personnel and personal observations of the claimant at the hearing.  The opinion is overly restrictive and inconsistent with the claimant's...admitted level of activities and her treatment plan.  The claimant has no treating mental health source.

(AT 19.)

As an initial matter, the court observes that the ALJ failed to explain why he found plaintiff's level of activity to be inconsistent with Dr. Ghaemian's opinion.  At the hearing, plaintiff testified that she spends most of the day in bed, and that her husband did all the housework, helped her bathe, helped her dress, fixed meals, and did the shopping.  (AT 66-67, 69-70.)  This testimony seems generally consistent with what plaintiff stated in her function report, although it is somewhat illegible.  (AT 191-98.)  While the ALJ was not necessarily required to accept plaintiff's testimony at face value, the ALJ should, at a minimum, have referred to particular record evidence regarding plaintiff's daily activities that undermined plaintiff's testimony and Dr. Ghaemian's opinion.

Furthermore, the fact that plaintiff does not have a treating psychologist or psychiatrist in this case is not a valid reason to reject plaintiff's symptoms and Dr. Ghaemian's

opinion, because plaintiff testified that she could not afford seeing a psychologist. (AT 74-76.) SSR 96-7p provides that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide...For example:...The individual may be unable to afford treatment and may not have access to free or low-cost medical services." SSR 96-7p, at **7-8.

That said, there also appears to be support in the record for some of the ALJ's other reasons for discounting Dr. Ghaemian's opinion. For example, despite Dr. Ghaemian's conclusion that plaintiff could not maintain concentration for full-time sustained simple and repetitive tasks, she assessed plaintiff's concentration, persistence, and pace as average. (AT 538-39.) Indeed, upon concentration testing, plaintiff made no mistakes and had no difficulty with performing three-step commands. (AT 538.) Therefore, the ALJ reasonably concluded that Dr. Ghaemian's opinion was inconsistent with her own findings in that regard, and also inconsistent with her assessed GAF score of 53, which generally suggests moderate symptoms and difficulties. See footnote 7, supra. Furthermore, as the ALJ observed, multiple treatment records indicated that plaintiff's psychiatric status was stable, controlled, and/or improving. (See e.g., AT 17, 372, 383, 386, 417, 438, 464.) Additionally, on June 22, 2009, non-examining state agency psychologist Dr. Judith Levinson, after reviewing plaintiff's records, assessed only moderate functional limitations and opined that plaintiff was able to understand and remember work locations and simple routines in a low-demand setting; maintain adequate attention and concentration for simple routine tasks and sustain a workday/workweek setting; accept instructions from a supervisor and interact with co-workers on a limited basis, with no public contact; and travel, avoid hazards, and respond to simple changes. (AT 540-42.)

Nevertheless, the court finds it inappropriate to definitively resolve the issue of Dr. Ghaemian's opinion at this stage, because Dr. West's April 6, 2010 assessment, which the ALJ failed to discuss, also addressed plaintiff's mental limitations, such as short-term memory

deficits, depression, anxiety, and concentration and attention deficits. (AT 631.) Indeed, because plaintiff did not have a treating psychologist or psychiatrist, she appears to have received most of her mental health medication and monitoring from Dr. West. Accordingly, on remand, the ALJ will be required to weigh Dr. West's opinion along with the other record evidence of plaintiff's mental impairments, and consider whether or not revision of his analysis concerning Dr. Ghaemian's opinion is appropriate.[8]

        3.      <u>Whether the ALJ improperly discounted the testimony of plaintiff and third parties as to the nature and extent of plaintiff's functional limitations</u>

Finally, in light of the court's conclusion that the case should be remanded for further consideration of the medical evidence, which may or may not impact the ALJ's credibility determinations, the court declines to address these issues at this juncture.

## V.   CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 13) is GRANTED IN PART.

2. The Commissioner's cross-motion for summary judgment (Dkt. No. 16) is DENIED.

3. This matter is remanded for further proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).

4. Judgment is entered for plaintiff.

////

////

---

[8] The court expresses no opinion regarding how the evidence of plaintiff's physical or mental impairments should ultimately be weighed within the confines of the applicable regulations and case law. On remand, the ALJ is free to further develop the record as appropriate, whether by obtaining a supplemental consultative evaluation(s), seeking clarification from plaintiff's treating sources, and/or conducting a supplemental hearing with additional vocational expert testimony.

13

5. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED: November 16, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE